**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION, *et al.*,

          Plaintiffs,

    v.

JEREMY R. LENT, *et al.*,

          Defendants.

_____/

No. C-04-4088 CW (EMC)

**ORDER GRANTING DEFENDANT
JEREMY LENT'S MOTION TO
COMPEL THE OFFICE OF THE
COMPTROLLER OF THE CURRENCY
TO PRODUCE SUBPOENAED
DOCUMENTS; SEALING ORDER**

**(Docket No. 101)**

## I.   INTRODUCTION

Currently pending before the Court is Defendant Jeremy Lent's Motion for an Order to Compel the Office of the Comptroller of the Currency ("OCC") to produce documents.  Lent is joined in the motion by all co-defendants (John Hashman, Douglas Wachtel, Yinzi Cai, and Bruce Rigione).  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS Defendants' motion to compel.

## II.   FACTUAL BACKGROUND

A.   The SEC Complaint

The Securities and Exchange Commission ("SEC") has filed suit against various individuals who were senior executives of a company, NextCard, Inc., for allegedly making false statements and insider trading in violation of securities laws.  NextCard was a publicly traded company that issued credit cards through its banking subsidiary, NextBank, N.A.  (Compl., ¶ 1.)  The essence of the SEC's claims against the various individuals is as follows:

> [F]rom at least November 2000 through October 2001, Defendants knew that NextCard's credit card losses and delinquencies were higher than anticipated.  Instead of revealing NextCard's credit card losses to investors, Defendants made a series of undisclosed, after-the-quarter accounting adjustments on NextCard's books to lower artificially the reported level of delinquent loans and bad loan write-offs and to deprive investors of the ability to analyze NextCard's quarter-by-quarter performance in a meaningful fashion.  Defendants therefore had NextCard make material misstatements and omissions in its earnings releases and periodic reports for the 2000 fiscal year and for the first and second quarters of the 2001 fiscal year.

*Id.*

Among other things, the SEC alleges that Defendants reclassified delinquent loans as "loans held for sale," in order to reduce the charge-off rate and delinquent loan ratio for the fourth quarter of, and fiscal year, 2000.  *Id.*, ¶¶ 17-24.  The SEC also alleges that for the second quarter of 2001, Defendants reclassified certain delinquent accounts, where NextCard challenged the account holder's bankruptcy filing, as fraud losses rather than credit losses, allowing NextCard to underreport its charge-off rate by 29%.[1]  *Id.*, ¶ 31.  The SEC further alleges that in June 2001, Defendants changed its methodology for calculating its loan loss reserve for writing off bad loans by forecasting the rate of delinquent loans over a nine-month, rather than twelve-month, period.  *Id.*, ¶ 32.

The SEC alleges that in the fall of 2001, the OCC conducted an expanded examination of NextBank and determined that NextCard's management of its subsidiary, NextBank, put the financial health of the bank at risk.  *Id.*, ¶ 35.  Specifically, the SEC alleges that "the OCC determined that NextCard's reclassification of first pay defaults and challenged bankruptcies during the first and second quarters of 2001 was inappropriate and inconsistent with banking industry standards.  The OCC required NextCard to reverse the reclassifications beginning in the third quarter of 2001, and required NextCard to use the twelve-month loan loss reserve calculation due to the inherent risk in their loan portfolio."  *Id.*  The SEC alleges that this reclassification resulted in a

---

[1] Although the SEC alleges a 29% differential in the charge-off rate, the facts alleged in Paragraph 30 of the Complaint suggest that the reclassification resulted in a reduction of 0.29% to 0.79% in the charge-off rate.  ("On July 2, 2001, NextCard's current charge-off rate was 5.29% compared with the company's prior forecast of 4.5% to 5%.")  Compl., ¶¶ 30, 31.

**United States District Court**
For the Northern District of California

1.76% increase in the charge-off rate for the third quarter of 2001, which NextCard reported at 7.89%.

In its Complaint, the SEC refers to the OCC's determination that NextBank was "significantly undercapitalized." *Id.,* ¶ 36.  During the OCC's examination, "the OCC determined that the bank was classifying some delinquent accounts sold into a securitization trust as fraud losses, although the delinquencies were actually attributable to credit quality problems.  These assets were being repurchased by the bank at par, a practice that constituted sale of assets with recourse." Reynolds Decl., Ex. L (OCC Feb. 7, 2002 press release).  Upon this determination, the OCC compelled NextBank to add all of its securitized receivables, not only those that were reclassified, as assets on its balance sheet.  *See* Mot. at 2:13-17.  This adjustment on NextBank's balance sheet resulted in its undercapitalization by $120 million.  *Id.* at 2:18-22.  Upon NextCard's public announcement of the OCC's action, its common stock price dropped 84%.  Compl.,¶ 36.  At oral argument, the SEC contended that it does not rely on the OCC's regulation of capital, and NextBank's subsequent undercapitalization, to support the SEC's claims, but that it reserves the right to introduce evidence of the drop in NextCard's stock price to show damages or profits disgorgement.

The SEC claims that Defendants Lent, Hashman, Cai, Wachtel and Rigione, made material misstatements in connection with the sale of securities with intent to defraud.  *See id.*, ¶¶ 43, 46.  In support of its insider trading claims, the SEC alleges that in late 2000 and 2001, Defendants Lent, Hashman, Cai and Wachtel sold NextCard stock while possessing material non-public information about NextCard's financial problems.  *Id.*, ¶¶ 37-41, 49.  Defendants point out that scienter is an element of the SEC's claims, and that Defendants' good faith and mental state are at issue in this case.  Mot. to Compel at 11-12.

B.    Documents in Dispute

On May 23, 2005, Defendants submitted to the OCC an administrative request and accompanying subpoena for documents issued out of the U.S. District Court for the District of Columbia.  *See* Reynolds Decl. in Support of Mot. to Compel, Ex. E.  On July 12, 2005, the OCC, through its Senior Deputy Comptroller Timothy W. Long, authorized the SEC to produce all

**United States District Court**

For the Northern District of California

documents that the OCC provided to the SEC concerning NextBank or NextCard, except for (1)
attorney-client or other privileged communications as determined by the SEC prior to production,
and (2) documents generated by FDIC examiner Robert Long.  OCC Opp'n at 6-7.  The OCC
determined that this production would place the SEC and the Defendants on a "level playing field"
with respect to OCC-generated documents.  *Id.*  However, the OCC denied Defendants' request as to
OCC documents not in the SEC's possession, such as documents prior to 2001.  *Id.* at 7-8.

On August 9, 2005 after the OCC issued its final agency decision refusing to produce certain
documents, Defendants served a subpoena issued out of this District on the OCC's field office in
San Francisco, requesting documents from January 1999 concerning NextBank or NextCard.  *See*
Reynolds Decl., Ex. H.  The OCC objected to the subpoena, asserting, *inter alia*, the bank
examination privilege for the requested documents.  Among the documents sought by Defendants
are the following:

1.   All OCC communications in that time frame with NextBank, NextCard, Defendants,
or the Ernst & Young audit firm.  *See* Consolidated Reply at 14 ("trying to discover
the bank's (i.e., *their own*) communications with the OCC").  At oral argument, the
OCC represented to the Court that it agreed to produce all 2001 OCC-NextBank
correspondence, and offered to produce letters relating to NextBank's accounting
practices for the year 2000, but would not produce 1999 correspondence or non-
accounting related correspondence for 2000.  The OCC also refuses to produce
internal OCC memos or emails as privileged deliberative material and unduly
burdensome.

2.   Materials relating to the OCC's 1999 and 2000 examinations of NextBank; the SEC
agrees to produce the 1999 and 2000 examination reports.[2]  However, as articulated

---

[2] The SEC has agreed to produce the OCC's 1999 and 2000 bank examination reports, as well
as minutes of a Special Meeting of NextBank's Board of Directors on October 26, 2000 and handwritten
notes of the Exit Meeting on October 31, 2001 among NextBank, OCC and FDIC representatives.  Yun
Decl., ¶ 10 and Exs. A-D.  The SEC represents that it has produced or offered to produce all of the OCC
and FDIC documents in its possession except for internal attorney-client communications, work product
materials from FDIC's legal counsel and a  transcript of testimony taken by FDIC's outside counsel.
*Id.,* ¶ 8.

4

1    in oral argument, Defendants seek the OCC's internal memos, communications and

2    emails, which the OCC refuses to produce.

3       3.   Documents concerning the OCC's requirement that NextBank change several

4    accounting practices.

5    *See* Mot. to Compel at 7-8.

6       In essence, Defendants seek all OCC correspondence with NextBank or NextCard, or its

7    officers or audit firm, in 1999 and 2000, not limited to correspondence relating to accounting

8    practices.  Defendants also want to compel production of internal OCC documents, including e-

9    mails, in order to find evidence of the OCC's true motive behind its demand that NextBank

10   reclassify its loan losses and put all of its securitized receivables back onto its balance sheets.

11   **III.  DISCUSSION**

12   A.  Application of Rule 45

13      Defendants argue that the Federal Rules of Civil Procedure govern the recent subpoena

14   issued against the OCC, and that Defendants are not limited to seeking review of the OCC's decision

15   by the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.  Rule 26 allows the scope of

16   discovery to reach "any matter, not privileged, that is relevant to the claim or defense of any party."

17   Fed. R. Civ. Proc. 26(b)(1).  The district court makes the determination of relevance *de novo*.  The

18   APA, on the other hand, limits the scope of judicial review of an agency's action to determine

19   whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

20   5 U.S.C. § 706(2)(A).  Deference is afforded, therefore, to the agency's determination on discovery.

21      The Ninth Circuit has held that "district courts should apply the federal rules of discovery

22   when deciding on discovery requests made against government agencies, whether or not the United

23   States is a party to the underlying action." *Exxon Shipping Co. v. United States Dept. of Interior*, 34

24   F.3d 774, 780 (9th Cir. 1994).  This holding conflicts with cases cited by the SEC from other circuit

25   courts, which have held that the APA governs enforcement of a subpoena issued on a non-party

26   federal agency.  *See United States E.P.A. v. General Electric Co.*, 197 F.3d 592, 598 (2nd Cir. 1999)

27   ("We disagree with the Ninth Circuit's approach and think that the only waiver of sovereign

28   immunity that would permit a court to require a response to a subpoena in an action in which the

**United States District Court**

For the Northern District of California

government is not a party is found in the APA"); *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 277-78 (4th Cir. 1999) (APA's deferential standard of review governs court review of agency's refusal to comply with subpoenas. *See also Al Fayed v. Central Intelligence Agency*, 229 F.3d 272,  275-76 (D.C. Cir. 2000) (recognizing disagreement among the courts); Schwarzer, Tashima and Wagstaffe, *Cal. Prac. Guide: Federal Civil Procedure Before Trial*, §§  11:2233-11:2236.

The SEC and OCC fail to recognize, or even discuss, the Ninth Circuit's holding in *Exxon. See* OCC Opp'n 10-13 (citing, *inter alia*, *E.P.A.* and *COMSAT* with no discussion of *Exxon*).  *Exxon* is controlling upon this Court.  The Federal Rules of Civil Procedure, not the APA, govern this matter.  As the Ninth Circuit held, the balancing test authorized by the federal rules is sufficient to "ensure that unique interests of the government are adequately considered."  *Exxon*, 34 F.3d at 780.

B.    Relevance of Documents

Defendants demand production of OCC documents beyond those that were received by the SEC.  Applying the relevance standard under Rule 26, as applicable to a Rule 45 subpoena, Defendants argue that the OCC documents are "highly relevant to Defendants' defense of this case." Consolidated Reply at 3:12-13.  Because the SEC's claims have scienter requirements and good faith defenses, Defendants' state of mind regarding accounting practices and disclosure requirements are at issue.  The SEC argues that its claims against NextCard, a publicly traded company, are not identical to the OCC's regulatory concerns about NextBank as a federally chartered bank, and that the whole universe of OCC documents sought by Defendants is not relevant to the issues in the present litigation.  The OCC further argues that by agreeing to produce all OCC documents sent to the SEC, the Defendants are placed on a level playing field with the SEC.  This is not, however, the standard for determining relevance under Rule 26.  The question is whether the material is relevant to the claim or defense of any party.

1.    Defendants' State of Mind

First, Defendants contend that the OCC did not challenge NextBank's accounting practices until the fall of 2001.  They believe that the internal documents will show that the OCC did not

1  object to, or indeed had even approved of, earlier iterations of NextBank's attempts to classify fraud

2  and credit losses, and that the OCC's position changed in 2001 for extraneous reasons.

3  At first blush, it would appear that the OCC's motive for changing positions, if not

4  communicated to NextCard, is irrelevant to *Defendants'* state of mind.  Only what was

5  communicated to NextCard would be probative.  In that regard, all communications between the

6  OCC and NextCard pertaining to NextCard's accounting practices should be produced if they fall

7  within a reasonable time frame as affected NextCard's state of mind.  Such documents dating back

8  to 1999 through 2001 shall be produced.

9  Internal documents not disclosed to NextCard would seem irrelevant to Defendants' state of

10  mind.  However, Defendants contend they were affirmatively misled by the OCC.  Defendant

11  Rigione submitted evidence that in January 2001, an OCC examiner told certain NextCard officers

12  that NextCard's securitization activities were satisfactory.  Rigione Decl., ¶ 12 and Ex. A,

13  provisionally filed under seal.  Rigione and Defendant Wachtel also submitted evidence that in

14  September 2001, they were told by an OCC accountant that NextCard had correctly accounted for

15  Loans Held for Sale.  *Id.*, ¶ 28; Wachtel Decl., ¶¶ 2-4, provisionally filed under seal.  There is a

16  likelihood that these factual allegations will be disputed by the SEC and OCC.  Whether these

17  assurances were in fact given by OCC agents may be informed by the OCC's position at or about the

18  time of these alleged representations.  If the internal documents evidence a shift in the OCC's

19  position, Defendants' assertions about the OCC agents' assurances would have greater credence.  If

20  no such shift is evident, the OCC's denial would gain credence.  Hence, the OCC internal

21  communications about NextCard's accounting practices shortly before, during and after the alleged

22  misrepresentations are relevant to whether assurances were made which in turn informs Defendants'

23  scienter.

24  Accordingly, in addition to the documents described in the OCC letter of December 12, 2005

25  (documents and tapes NextBank provided to the OCC, 2001 correspondence between the OCC and

26  NextBank), the OCC shall produce any documents reflecting the conversations referred to in the

27  Rigione and Wachtel declarations described above.  Defendants are also entitled to documents,

28  including internal correspondence and memos, reflecting the OCC's position on NextCard's

United States District Court

For the Northern District of California

securitization activities and accounts of Loans Held for Sale.  As to these documents, the producible

time frame shall be 2000 and 2001 (which is reasonably proximate in time to the alleged

assurances).

> 2.    <u>Defense Theory Re Causation</u>

Defendants also argue that the OCC's documents are critical to their causation and damages

defenses to the SEC's insider trading claims.  The SEC alleges that NextBank erred in its loan

classifications, that the OCC required NextBank to reverse them, and that the reversal caused

NextCard to report higher net charge-offs for the third quarter of 2001.  *See* Compl., ¶ 35.  The OCC

further required NextCard to add all of its $1.2 billion in securitized receivables to its balance sheet

as assets and concluded that NextBank was "significantly undercapitalized," followed by the 84%

plunge in NextCard's stock price.  Mot. to Compel at 2.  The SEC alleges that Defendants knew of

the undisclosed loan classifications, and profited from inflated stock prices before disclosing the

facts which led to the stock drop.  Defendants contend, however, that the OCC's change in policies,

rather than Defendants' disclosures about the loan classifications, was responsible for the OCC's

requirement that NextCard transfer all (rather than a portion) of its securitized assets to its balance

sheet and NextBank's resulting undercapitalization.  *Id.* at 12.

Defendants seek internal OCC documents from 1999 to 2001 to demonstrate OCC's growing

distaste for NextCard's rate of growth and the riskiness involved with online credit card lenders.

Consolidated Reply at 7.  Defendants argue that they are entitled to discovery of the OCC's files

revealing its decision that NextBank should be sold, asserting a theory that the OCC adopted a risk-

averse policy against "monoline" issuers of credit cards such as NextBank and pressured such

issuers to sell themselves to more diversified banks.  Consolidated Reply at 4 n.3.  However,

because the SEC's complaint only alleges fraud with regard to NextBank's loan classification

practice and not the undercapitalization, the OCC's alleged bad faith on the latter issue has no direct

relevance to liability under the SEC's theory of the case.  Any relevance is further attenuated

because the good faith and scienter of Defendants turn on *their* knowledge and state of mind, not the

state of mind of the OCC.

United States District Court

For the Northern District of California

1    Defendants further argue that evidence of the OCC's bad faith is needed to rebut any

2   prejudice resulting from the SEC's introduction of the 84% drop in stock price.  The SEC concedes

3   it is only alleging wrongdoing in this suit pertaining to the loan classification (not

4   undercapitalization) and that disgorgement therefor will be based only on a portion of the 84% drop

5   in stock.  This will require the finder of fact to make an allocation of the effect due to fraud in the

6   loan classification and the effect due to the reporting of the OCC's determination of

7   undercapitalization.  Defendants are concerned that an inference of wrongdoing by Defendants as to

8   the undercapitalization, though not part of the claim, will be drawn by the fact finder.  However, any

9   such inference is speculative and, in any event, can be rebutted by showing Defendants did not

10   commit wrongdoing, that the OCC's action in deeming the entire securitized portfolio tainted was

11   unreasonable and unexpected, and that Defendants had acted in good faith in the way they accounted

12   for securitized loans.  The relevance of the OCC's good faith, if extant at all, is extremely attenuated

13   to this collateral issue.

14    Finally, Defendants argue that the OCC's withholding of relevant documents violates

15   Defendants' due process rights.  Mot. to Compel at 22, citing *McClelland v. Andrus*, 606 F.2d 1278,

16   1286 (D.C. Cir. 1979) ("In addition to being bound by [its own rules regulating discovery in its own

17   proceedings under the APA], the agency is bound to ensure that its procedures meet due process

18   requirements.").  Here, Defendants' argument is dramatically exaggerated because the federal rules

19   govern the discovery.  The rules afford substantial liberality in discovery as evidenced in the above

20   analysis which concludes that even OCC internal documents may be relevant.

21   C.    Bank Examination Privilege

22    In an attempt to prevent the production of otherwise relevant documents, the OCC asserts the

23   bank examination privilege to protect the OCC's correspondence, internal communications, draft

24   reports, and other non-public documents.  OCC Opp'n at 16.  The bank examination privilege falls

25   within the scope of the qualified privilege for government deliberations, and derives out of practical

26   necessity:

27    Bank safety and soundness supervision is an iterative process of
comment by the regulators and response by the bank.  The success of

28    the supervision therefore depends vitally upon the quality of

United States District Court

For the Northern District of California

communication between the regulated banking firm and the bank regulatory agency. . . . Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency.  Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank.  These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*In re Subpoena Served Upon the Comptroller of the Currency, and the Secretary of the Board of Governors of the Federal Reserve System,* 630, 633-34 (D.C. Cir. 1992) (*"Fleet"*) (citations omitted).  The deliberative process privilege protects communications that are "both (1) 'predecisional' in that they have been generated prior to an agency's adoption of a policy or decision and (2) 'deliberative' in that they reflect the give-and-take of a deliberative decision-making process." *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1160, 1163 (W.D. Wash., 1986) (citing *Federal Trade Comm'n v. Warner Communications, Inc.*, 742 F.2d 1156, 1158, 1161 (9th Cir. 1984)).  The Court of Appeals noted in *Fleet* that "[t]he bank examination privilege, like the deliberative process privilege, shields from discovery only agency opinions or recommendations; it does not protect purely factual material.  967 F.2d at 634.

       1.    <u>No Waiver of Privilege</u>

       Defendants contend that the OCC waived its bank examination privilege by failing to assert it in response to Defendants' administrative request for documents, but the Court finds no waiver here.  The privilege has been raised by the OCC in other contexts.  In particular, the OCC raised the privilege in response to the Rule 45 subpoena that is at issue here.  *See* Reynolds Decl. in Support of Mot. to Compel, Ex. I (August 23, 2005 letter from OCC to defense counsel objecting to subpoena).  Defendants suffered no irreparable prejudice at that point, and the privilege is not deemed waived.  *Cf. Burlington Northern & Santa Fe Railway Co. v. U.S. Dist. Ct. for the Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (applying "holistic reasonableness analysis," Court held that defendant waived privileges where privilege log was filed five months after document request), *cert. denied*, --- U.S. ---, 126 S.Ct. 428 (2005).

       Defendants also argue that it is unfair for the OCC to waive the privilege selectively, and that the privilege claim is waived as to all the unproduced documents.  The Court finds no waiver based

United States District Court
For the Northern District of California

1  on the voluntary production of other documents.  Such a waiver is too broad, and waivers are

2  generally narrowly construed.  *See Weil v. Investment/Indicators, Research and Management, Inc.*,

3  647 F.2d 18, 25 (9th Cir. 1991) (finding waiver of attorney client privilege limited to

4  communications about the matter actually disclosed).  *See also Electro Scientific Industries, Inc. v.*

5  *General Scanning, Inc.*, 175 F.R.D. 539, 544 (N.D. Cal. 1997) (limiting waiver to narrow scope).

6  By releasing documents it has previously agreed to produce, the OCC has not placed at issue its

7  motive or reasons for deeming NextBank's entire securitized loan portfolio as assets.  Moreover, as

8  noted above, the relevance of the OCC's bad faith is attenuated, if existent at all.  Thus, the OCC, a

9  non-party, has not gained any tactical advantage in this litigation.  *Cf. In re Keeper of the Records*,

10  348 F.3d 16, 26 (1st Cir. 2003) ("once a litigant puts the legal advice to him at issue, the opposing

11  party should be entitled to all the information on that same subject regardless of when it was

12  compiled.  This ensures that a litigant is not able to present only selected bits of the story and thus

13  distort the truth-seeking process.").

14  Defendants further argue that the OCC waived any privilege over the 2000 Exam Report by

15  publicly disclosing selected contents of that report, citing *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir.

16  1999) (ordering disclosure of wiretapped recordings that were played in open court and entered the

17  public domain).  Mot. to Compel at 21-22.  Because the SEC has agreed to produce the 2000 Exam

18  Report, the Court need not address the issue of waiver as to that document.

19  2.  Applicability of Privilege

20  The OCC bears the burden of demonstrating the applicability of the bank examination

21  privilege, which is a qualified privilege.  *See In re Providian Financial Corp. Securities Litigation*,

22  222 F.R.D. 22, 26 (D.D.C. 2004).  In so doing, the OCC must show that the materials are

23  deliberative rather than factual; if facts are intertwined with the OCC's opinions, conclusions and

24  recommendations, the OCC must show that the deliberative portions cannot be redacted from the

25  documents.  *Id.*  Accepting the OCC's representation that the requested documents (correspondence

26  with NextBank/NextCard and internal OCC documents) contain deliberative material, and are

27  covered by the bank examination privilege, the Court must consider whether good cause exists to

28  override the privilege.  *Id.*

United States District Court

For the Northern District of California

In *In re Subpoena Served Upon the Comptroller of the Currency (Fleet)*, 967 F.2d 630 (D.C. Cir. 1992), the Court of Appeals set forth a balancing test to evaluate the competing claims of the bank examination privilege and determine whether there is good cause to override the qualified privilege: "'(i) The relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.'" *Fleet*, 967 F.2d at 634 (quoting *In re Franklin Nat'l Bank Securities Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979). The Court finds that certain OCC documents shall be disclosed because the Court finds that any privilege is outweighed by Defendants' interest in disclosure, as discussed below, making *in camera* review of the documents unnecessary. *See Principe v. Crossland Savings, FSB*, 149 F.R.D. 444, 448 (E.D.N.Y. 1993) (finding *in camera* review unnecessary because privilege was overridden by public interest).

a.   Relevance

As to documents relevant to communications with NextBank or which may be probative as to whether OCC personnel gave NextCard certain assurances in 2001, such documents are relevant to Defendants' state of mind, as discussed in Section III.B.1, *supra*. *See Principe*, 149 F.R.D. at 449 (finding FDIC examination reports potentially relevant to proving defendants' scienter).

b.   Availability of Other Evidence

Defendants contend that the subpoenaed documents, including the OCC's internal correspondence, draft reports, and exam reports, cannot possibly be obtained from any other source, and dispute the alternate sources of information proffered by the OCC-Bank's records created in the ordinary course of business; Ernst & Young work papers; documents generated in shareholder litigation (which has been subject to a discovery stay); Treasury Inspector General's report on NextBank's failure; OCC's Prompt Corrective Action directive requiring NextBank to raise its level of capital; reports of NextBank's internal and external auditors and accountants; expert reports and depositions; testimony of NextBank employees and directors. Mot. to Compel at 14-15; OCC Opp'n at 19-20. These alternate sources do not offer documentation of similar probative value as internal

United States District Court

For the Northern District of California

1  OCC documents and direct correspondence between the OCC and NextCard.  This factor weighs in

2  favor of disclosure.

3                c.   <u>Seriousness of Litigation</u>

4        The OCC contends that this litigation is rather routine securities litigation and does not

5  involve important national policy issues, as might arise from the failure of a major bank.  OCC

6  Opp'n at 20.  Defendants contend, however, that the SEC's fraud claims affect public confidence in

7  the financial markets, not to mention the effect on the individual Defendants' livelihoods.  As in

8  *Principe*, which was a consolidated class and derivative action against a bank and its former officers

9  and directors, NextBank was a federally chartered bank, whose officers are alleged to have failed to

10 disclose material facts in order to inflate NextCard's stock value.  *Principe*, 149 F.R.D. at 445.  As

11 in *Principe*, this case also involves serious allegations and raises fundamental issues regarding

12 public confidence in the fairness of the financial markets.  *Id.* at 449.  This factor thus weighs in

13 favor of disclosure.

14               d.   <u>Role of Government in Litigation</u>

15       The SEC clearly has a role in this litigation, but the OCC contends that because the FDIC's

16 action against NextBank's directors was settled in February 2005, the OCC has no interest in the

17 SEC's action.  However, in *Principe*, where the government was not a party to the class action, the

18 Court found that the FDIC had regulatory duties with respect to the CrossLand bank and its collapse.

19 *Id.*  Similarly, the OCC's interests here are implicated in the SEC's action against NextBank, and the

20 federal government has a direct interest in this action.  Although the suit is brought by the SEC, not

21 the OCC, the SEC's action is based upon the OCC's investigations and actions.  *See* Compl., ¶¶ 4,

22 35, 36.  This factor also weighs in favor of disclosure.

23               e.   <u>Future Timidity by Government Employees</u>

24       The OCC argues that disclosure of its supervisory views takes a toll on the confidence of

25 examiners that their candid views will not be compromised or used toward interest unrelated to the

26 OCC's bank supervisory objectives.  OCC Opp'n at 21.  Although this factor weighs against

27 disclosure, it does not outweigh the first four factors.  *See Principe*, *id.* at 449 (finding that this

28 factor does not alone outweigh public interest in disclosure because bank officials are obligated by

1   law to cooperate with examiners).  Furthermore, the possibility of timidity by government

2   employees is limited because the documents ordered produced are narrowly defined and a protective

3   order has been entered to limit public access to these documents.  *See* March 15, 2005 Protective

4   Order (Docket No. 53).  Moreover, as Defendants point out, they are NextBank's former officers,

5   not third parties with no direct stake in the matters at issue.

6   D.    Summary -- Documents to Be Produced

7        On balance, these five factors weigh in favor of disclosure of the documents ordered

8   produced herein.

9        The following OCC documents shall be produced, subject to the Protective Order**:** (i) the

10   documents described in the OCC letter of December 12, 2005 (documents and tapes NextBank

11   provided to the OCC, 2001 correspondence between the OCC and NextBank); (ii) all OCC

12   correspondence with NextBank or NextCard or their auditing firm in 1999 and 2000 which refer to

13   NextBank or NextCard's accounting practices and decisions; (iii) documents relating to

14   conversations wherein OCC personnel discussed with NextCard in January 2001 its securitization

15   efforts and in September 2001 accounting of loans held for sale, as described in the Rigione and

16   Wachtel Declarations; (iv) internal documents which reflects the OCC's position on each of these

17   two issues during 2000 and 2001.

18   E.    Requests to Seal Declarations

19        The Court has provisionally ordered the filing under seal of the Rigione, Lent and Wachtel

20   Declarations in Support of the Motion to Compel (Docket No. 140).  Having now ruled on the

21   applicability of the bank examination privilege to documents reflecting the OCC's deliberations in

22   examining NextBank, the Court hereby grants the requests to file under seal as follows:

23        1.    Paragraphs 9 through 32 and Exhibits A, B, D, E, F and G of the Rigione Declaration

24            shall be filed under seal (Docket No. 128).  Defendant Rigione shall file a public

25            version of his declaration, with appropriate sections redacted.

26        2.    Paragraphs 9 through 13 and Exhibit A of the Lent Declaration shall be filed under

27            seal (Docket No. 134).  Defendant Lent shall file a public version of his declaration,

28            with appropriate sections redacted.

United States District Court

For the Northern District of California

3.      The Wachtel Declaration shall be filed under seal.  Defendant Wachtel shall submit his declaration to the Clerk with the instruction, "Filed Under Seal Pursuant to Court Order."  The Clerk shall remove the previously filed Wachtel Declaration from the public docket (Docket No. 133).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel is GRANTED.

This order disposes of Docket No. 101.


IT IS SO ORDERED.


Dated:  January 12, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge